UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                    )
**KARL-MARX EDWARD OKEKE-**         )
**VONBATTEN,**                      )
                                    )
        **Plaintiff,**      )
                                    )
        v.                  )   Civil Action No. 08-2116 (RWR)
                                    )
**GREATER WASHINGTON MORTGAGE**     )
**LLC et al.,**                     )
                                    )
        **Defendants.**     )
_____)

## MEMORANDUM OPINION AND ORDER

Pro se plaintiff Karl-Marx Edward Okeke-VonBatten brings claims under the Fair Credit Reporting Act ("FCRA"), codified at 15 U.S.C. §§ 1681 et seq., alleging that defendant Justin Murphy employed defendant Jerry Burton, a process server, to obtain impermissibly a copy of the plaintiff's credit report from a credit reporting agency. Murphy has moved for summary judgment, arguing, in part, that he is not vicariously liable for any violations of the FCRA that Burton may have committed. Because material facts are not in dispute and there was no principal-agent relationship between Murphy and Burton, Murphy's motion for summary judgment will be granted.

## BACKGROUND

Murphy represented in the D.C. Court of Appeals a client prosecuting an appeal of a Superior Court civil protection order

entered against her in favor of Okeke-VonBatten.  (Def.'s Mot. for Summ. J. ("Def.'s Mot.") at 5-6 ¶¶ 1-2.[1])  The Court of Appeals reversed the Superior Court's order and remanded the case for reconsideration of the client's motion for attorneys' fees.  (Id. at 6 ¶ 2.)  On remand, the Superior Court judge ordered the client to re-file her application for attorneys' fees and to mail a copy of the application to Okeke-VonBatten.  (Id. at 7 ¶ 5.)  Murphy contacted Burton, a process server for B&B Process Servers.  He asked Burton to obtain Okeke-VonBatten's current mailing address but did not direct the particular way in which Burton should find it.  (Id. at 7-9 ¶¶ 7-10.)  Burton obtained the address and billed Murphy $98 for his services.  (Id. at 10-11 ¶ 14.)

Okeke-VonBatten brings claims against Murphy under the FCRA, alleging that Burton worked for Murphy, and that based upon a request from Murphy, Burton asked an employee of Greater Washington Mortgage LLC to check Okeke-VonBatten's credit report.[2]  (Compl. ¶¶ 5, 13-14.)  Murphy has moved for summary

---

[1] Okeke-VonBatten filed an opposition in which he contests some of Murphy's factual allegations and asserts the need for further discovery with respect to other factual allegations.  (See Pl.'s Resp. to Murphy Request for Summ. J.)  All facts cited in this opinion from Murphy's Statement of Material Facts are uncontested by Okeke-VonBatten.

[2] Although the complaint alleges that the defendants are liable under 15 U.S.C. § 1681q, that provision does not provide a civil right of action.  See infra pp. 4-5.  However, the complaint will be construed liberally to allege a cause of action

judgment, arguing that he did not personally obtain Okeke-VonBatten's credit report and that he did not willfully or negligently violate the FCRA, that Burton had a permissible purpose for obtaining Okeke-VonBatten's credit report, and that Murphy is not vicariously liable even if Burton violated the FCRA. (Def.'s Mot. at 13, 17, 20-21.)

## DISCUSSION

Summary judgment may be granted when the pleadings, the discovery and disclosure materials on file, and any affidavits show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Moore v. Hartman, 571 F.3d 62, 66 (D.C. Cir. 2009). A court considering a motion for summary judgment must draw all "justifiable inferences" from the evidence in favor of the nonmovant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). Moreover, a "[c]ourt gives *pro se* parties the benefit of the doubt and may ignore some technical shortcomings of their filings." Voinche v. FBI, 412 F. Supp. 2d 60, 70 (D.D.C. 2006) (applying at the summary judgment stage Richardson v. United States, 193 F.3d 545, 548 (D.C. Cir. 1999), which held in the context of a motion to dismiss that "[c]ourts

---

under sections 1681n and 1681o, which provide for civil liability. See Kaemmerling v. Lappin, 553 F.3d 669, 676 (D.C. Cir. 2008) (noting that pro se complaints are to be construed liberally).

must construe *pro se* filings liberally"). The nonmovant must either "come forward with specific facts showing that there is a genuine issue for trial[,]" Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (internal quotation marks and emphasis omitted), or show that the materials cited by the movant do not establish the absence of a genuine dispute. Fed. R. Civ. P. 56(c)(1)(B).

Sections 1681n and 1681o create a civil cause of action against defendants who willfully or negligently violate the FCRA's requirements. While § 1681q provides explicit criminal penalties -- but not explicit civil liability -- for "[a]ny person who knowingly and willfully obtains information on a consumer from a consumer reporting agency under false pretenses[,]" courts have held that a violation of § 1681q can also result in civil liability under §§ 1681n or 1681o.[3]  See, e.g., Wiggins v. Philip Morris, Inc., 853 F. Supp. 470, 477

---

[3] "'Whether a consumer report has been obtained under false pretenses will ordinarily be determined by reference to the permissible purposes for which consumer reports may be obtained, as enumerated in § 1681b.'"  Wiggins v. Philip Morris, Inc., 853 F. Supp. 470, 477 (D.D.C. 1994) (quoting Zamora v. Valley Fed. Sav. & Loan Ass'n of Grand Junction, 811 F.2d 1368, 1370 (10th Cir. 1987)).  Although § 1681b(a) lists circumstances under which consumer reports may be furnished by "consumer reporting agenc[ies]," its provisions have been interpreted equally to restrict users of credit reports to the listed permissible circumstances.  See, e.g., Korotki v. Thomas, Ronald & Cooper, P.A., No. 96-1877, 1997 WL 753322, at *2 (4th Cir. 1997); Hansen v. Morgan, 582 F.2d 1214, 1216 (9th Cir. 1978) (concluding that the "FCRA authorizes a civil remedy against a user of a credit report").

(D.D.C. 1994); Hansen v. Morgan, 582 F.2d 1214, 1219 (9th Cir. 1978) (concluding that a violation of § 1681q "forms a basis of civil liability under either § 1681n or § 1681o"). "[W]hen Congress creates a tort action, it legislates against a legal background of ordinary tort-related vicarious liability rules and consequently intends its legislation to incorporate those rules." Meyer v. Holley, 537 U.S. 280, 285 (2003). Although the D.C. Circuit has not addressed the issue, other circuits have applied to the FCRA this statutory presumption and concluded that principals may be vicariously liable for the FCRA violations of their agents. See, e.g., Chanler v. Stonich, 156 Fed. Appx. 945, 946-47 (9th Cir. 2005) (acknowledging that "traditional agency principles imposing vicarious liability of an employer for the torts of the employee" could apply to a claim under the FCRA if the defendant acted under the apparent authority of his employer); Jones v. Federated Fin. Reserve Corp., 144 F.3d 961, 965 (6th Cir. 1998) (holding that "a principal may be liable for a violation of the FCRA by an agent").

As construed to incorporate common law vicarious liability rules, the FCRA offers Okeke-VonBatten no relief. Murphy argues that even if Burton obtained a copy of Okeke-VonBatten's credit report under false pretenses, Murphy is not vicariously liable for any violation of the FCRA because "any relationship they may have had was not one of agency." (Def.'s Mot. at 18.) Under the

doctrine of *respondeat superior*, an employer may be liable for the wrongful acts or omissions of its employee if an agency relationship exists between them and the employee acted in the scope of his employment at the time of the prohibited act. Greene v. Amritsar Auto Servs. Co., 206 F. Supp. 2d 4, 7-8 (D.D.C. 2002). Conversely, when the employer-employee relationship is not one of agency, many cases refer to an employee as an independent contractor.[4] See, e.g., Sturdivant v. Seaboard Serv. Sys., Ltd., 459 A.2d 1058, 1060 n.5 (D.C. 1983); Smith v. Jenkins, 452 A.2d 333, 335 (D.C. 1982). Determining whether an agency relationship exists between an employer and employee is a fact intensive inquiry that turns on "'whether the employer has the right to control and direct the servant in the performance of his work and the manner in which the work is to be done.'" Safeway Stores, Inc. v. Kelly, 448 A.2d 856, 860 (D.C. 1982) (emphasis omitted) (quoting LeGrand v. Ins. Co. of N. Am., 241 A.2d 734, 735 (D.C. 1968)). Factors that a court considers include: 1) the manner in which the employer hired the alleged employee, 2) whether the employer pays the alleged employee wages, 3) whether the employer has the power to discharge the

---

[4] However, the Restatement (Third) of Agency § 1.01 cmt. c (2006) cautions that "the common term 'independent contractor' is equivocal in meaning and confusing in usage because some termed independent contractors are agents" while others are not. The Restatement suggests that a more appropriate way to refer to an employee who is not an agent of his employer is as a "nonagent service provider." Id.

alleged employee, 4) whether the employer has the power to control the alleged employee's conduct, and 5) whether the work is part of the regular business of the employer. Schecter v. Merchs. Home Delivery, Inc., 892 A.2d 415, 423 (D.C. 2006).

Murphy has presented evidence -- uncontested by Okeke-VonBatten -- that no employer-employee relationship existed between Murphy and Burton.  Murphy did not hire Burton as an employee.  Burton was already employed by B&B Process Servers.  Murphy, instead, retained Burton for the limited purpose of obtaining Okeke-VonBatten's address.  (Def.'s Mot. at 7-8 ¶¶ 7-8.)  Burton billed Murphy for $98 based on an hourly rate that he charged for his services; he did not receive wages from Murphy or Murphy's law firm.  (Id. at 10-11 ¶ 14.)  Additionally, "Murphy did not direct Burton on how he should obtain Okeke's address[.]" (Id. at 9 ¶ 10.)  Finally, Okeke-VonBatten has presented no evidence that Murphy as a regular part of his business as an attorney obtains on his own addresses at which to serve litigants.  Indeed, Murphy's law firm had previously retained B&B Process Servers to obtain the addresses of other individuals in other litigation matters.  (Id. at 7-8 ¶ 7.)  The evidence does not establish an employer-employee relationship between Murphy and Burton.[5]

---

[5] Okeke Von-Batten argues that Murphy is vicariously liable for any intentional tort Burton committed.  (Pl.'s Resp. to Murphy Request for Summ. J. ¶ 11.)  Even if a willful violation

Because Murphy has presented uncontested evidence that Burton is not his employee, Murphy is not vicariously liable for any violations of the FCRA that Burton may have committed.[6] Okeke-VonBatten does not allege in his complaint that Murphy violated the FCRA in any way other than by retaining Burton. Murphy's motion for summary judgment will be granted.

## CONCLUSION AND ORDER

No material facts are in dispute, and Murphy has demonstrated that there was no employer-employee relationship between him and Burton. Murphy is not vicariously liable for any violations of the FCRA that Burton may have committed, and Murphy is entitled to judgment as a matter of law. Accordingly, it is hereby

ORDERED that Murphy's motion [15] for summary judgment be, and hereby is, GRANTED. Judgment is entered for defendant Murphy.

SIGNED this 23rd day of February, 2011.

_____/s/_____
RICHARD W. ROBERTS
United States District Judge

---

of the FCRA were to be analogized to an intentional tort, a principal is not vicariously liable for the intentional torts of nonagent service providers. See Sturdivant, 459 A.2d at 1060 n.5.

[6] Whether Burton's purpose was permissible under § 1681b, therefore, need not be addressed.